[Cite as *State v. Williams*, 2021-Ohio-1250.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 20 CAA 03 0017 |
| RONALD M. WILLIAMS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  19 CRI 07 0511


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      April 12, 2021


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

MELISSA A. SCHIFFEL                   WILLIAM T. CRAMER
PROSECUTING ATTORNEY                  470 Olde Worthington Road
JOEL C. WALKER                        Suite 200
ASSISTANT PROSECUTOR                  Westerville, Ohio  43082
145 North Union Street, 3rd Floor
Delaware, Ohio  43015

*Wise, John, J.*

{¶1} Defendant-Appellant Ronald Williams appeals the judgment entered by the Delaware County Court of Common Pleas convicting him on eleven counts of Rape of a child under the age of thirteen in violation of R.C. 2907.02(A)(1)(b) and five counts of forcible Rape in violation of R.C. 2907.02(A)(2). Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

## FACTS AND PROCEDURAL HISTORY

{¶2} On May 31, 2019, Appellant was indicted on six counts of Rape involving a child under the age of thirteen years old in violation of R.C. 2907.02(A)(1)(b), all felonies in the first degree. Counts one and two alleged Appellant knew the victim was under ten years old. All six allegations were against the same victim, ZS.

{¶3} On July 25, 2019, the State filed a new indictment which included the original six counts of Rape against ZS, and added ten counts of Rape and one count of Gross Sexual Imposition against AW.

{¶4} On October 3, 2019, Appellant filed a Motion to Exclude any Evidence of Other Acts, Crimes or Wrongs seeking to prohibit Appellee from presenting evidence of other alleged misconduct involving criminal convictions, alleged conduct, or other investigations.

{¶5} On December 19, 2019, the trial court denied Appellant's Motion to Exclude any Evidence of Other Acts, Crimes or Wrongs.

{¶6} On January 21, 2020, Appellant's jury trial began.

{¶7} At trial, ZS testified she was born in September of 1999. When she was nine years old, she moved in with her mother, where she met Appellant. Approximately three

weeks after moving in, ZS was forced to perform oral sex on Appellant. While still nine years old, ZS went to live with Appellant at his house, where she first met Appellant's wife, Grace Williams. ZS lived at Appellant's house with Appellant, Grace, and ZS's sister, AW.

**{¶8}** While living at Appellant's house, ZS testified she was not allowed to have friends over or go outside. She said that Appellant always bathed her and her sister even though ZS could wash herself. ZS lived at the house on and off until she was eleven years old. ZS testified that while still nine years old and living with Appellant, she went to Appellant's room looking for AW. Grace and AW were asleep, and Appellant was awake, watching television. Appellant told ZS to take her underwear off, he then put lotion on his penis and penetrated her vagina. Appellant did not ejaculate in her, he would always use a napkin.

**{¶9}** Appellant then recalled several more instances of sexual abuse and said she was abused more times than she could count.

**{¶10}** AW also testified at trial. AW testified she was born in 2003 to the same mother as ZS. When AW was about six years old, she moved in with Appellant and Grace, Appellant's girlfriend. Starting when AW was six years old, Appellant made AW perform oral sex on him. She stated this happened routinely when Grace left the house until she was twelve years old.

**{¶11}** When AW was twelve and living with Appellant, Appellant penetrated AW's vagina with his finger and his penis. Appellant and AW continued to have vaginal intercourse regularly for the next three years. Appellant engaged in anal intercourse with

AW when she was thirteen years old. Appellant never ejaculated in her; he always used a napkin.

**{¶12}** EB lived with Appellant, Appellant's girlfriend Shirley, and Shirley's two kids, LC and ML, for several years starting around 1987. EB testified Appellant would bathe LC and ML. She often saw Appellant fondling and pinching LC's breasts. EB testified that after Shirley would leave for work in the morning, Appellant would routinely get LC and ML out of bed and take them to his bed room. EB testified she could hear moaning, growling, and the bed moving coming from Appellant's bedroom.

**{¶13}** LC then testified that Appellant began molesting her around age seven. The first time LC's mother, Shirley, was entertaining guests, and Appellant asked LC to come to his room. Appellant then closed the door. Appellant asked if LC loved him and then felt her all over under her dress. Appellant said if she was a good girl, they could do it again.

**{¶14}** LC testified that the molestation progressed from there. Appellant made her watch pornography and then act out what was on screen. When LC was eight years old, Appellant had vaginal intercourse with her. This continued to age twelve. Appellant never ejaculated inside her.  He always used a napkin or towel.

**{¶15}** At the close of the prosecution's case, Appellant moved to have the charges dismissed on a Crim.R. 29 motion. The trial court acquitted Appellant of Gross Sexual Imposition.

**{¶16}** On January 27, 2020, the jury returned a verdict of guilty on the remaining sixteen counts of Rape and found all of the force and age allegations to be true.

**{¶17}** Appellant waived a jury trial on the sexually violent predator specifications and a separate hearing was held to address the specifications. On January 30, 2020, at the hearing, the trial court took judicial notice of all the evidence presented at trial and the parties presented arguments.

**{¶18}** On February 18, 2020, the trial court imposed life without parole on each of the eleven counts of rape of a minor, all to be served concurrently. The court imposed ten-years-to-life on each of the five counts of forcible rape, all to be served consecutively. The court granted Appellant 216 days of jail credit, imposed five years of mandatory post-release control, and provided Appellant with notice of his registration as a Tier III sex offender.

## ASSIGNMENT OF ERROR

**{¶19}** On March 12, 2020, Appellant filed a notice of appeal raising the following Assignment of Error:

**{¶20}** "I. THE TRIAL COURT VIOLATED DUE PROCESS, EVID.R. 404(B), AND R.C. 2945.59 BY ADMITTING EVIDENCE OF PRIOR ACTS OF CHILD MOLESTATION FOR THE PURPOSE OF ARGUING THAT APPELLANT HAD A PROPENSITY TO MOLEST CHILDREN.

## I.

**{¶21}** Appellant, in his sole assignment of error, argues that the trial court erred in admitting evidence of prior acts of child molestation. We disagree.

### a. Standard of Review

**{¶22}** "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised

in line with the rules of procedure and evidence." *Rigby v. Lake City*, 58 Ohio St.3d 269, 271 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id*. The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). Generally, all relevant evidence is admissible. Evid.R. 402.

### b. Admissibility of EB's and LC's Testimony

{¶23} Evid.R. 404(B) provides:

(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶24} R.C. 2945.59 provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶25}** Rule 404(B) of the Ohio Rules of Evidence and R.C. 2945.59 preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶16. There are, however, exceptions to the rule. Evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B); to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶26}** In considering other acts evidence, trial courts should conduct a three-step analysis. The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. Next, the trial court must consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity with the character or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B), proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Finally, a trial court is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403, *Williams*, at ¶¶19-20.

**{¶27}** "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom*, 40 Ohio St.3d 277, 281-82, 533 N.E.2d 682 (1988).

As cautioned by the Ohio Supreme Court in *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), "…we therefore must be careful…to recognize the distinction between evidence which shows that a defendant is the type of person who might commit a particular crime and evidence which shows that a defendant is the person who committed a particular crime." *Id*. at 530. Evidence to prove the character of person the defendant is to show he acted in conformity therewith is barred by Evid.R. 404(B).

**{¶28}** We must first determine whether the other acts evidence is relevant to making any fact of consequence to determination of the action more or less probable than it would be without the evidence. In *Williams*, the Ohio Supreme Court found testimony of prior acts describing grooming techniques were relevant to show the defendant's intent was sexual gratification. *Williams, supra*, ¶22. Gross Sexual Imposition, with which the defendant was charged, requires "sexual contact." R.C. 2907.05(A)(1). R.C. 2907.01 defines "sexual contact" to require the touching be for the purpose of "sexual arousing or gratifying either person." In the instant case, Appellant was charged with both Rape and Gross Sexual Imposition, making intent of sexual gratification an element which the State must prove.

**{¶29}** The second step is to consider whether the evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show conformity therewith, or whether the acts evidence is presented for a legitimate purpose.

**{¶30}** In the case *sub judice*, Appellee was permitted to introduce the testimony of another child Appellant raped in similar fashion to that of ZS and AW, raping young female children living in the same home as Appellant when other adults were not around. In its Judgment Entry dated December 19, 2019, the trial court stated, "the sought-after

testimony is relevant because it may tend to prove what the prosecution alleges was the defendant's motive and intent: to derive sexual gratification from groping and raping children." We find the legitimate purpose of proving Appellant's intent to derive sexual gratification from groping and raping children relevant for the charge of Gross Sexual Imposition.

**{¶31}** The final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. In the case *sub judice*, the trial court gave a limiting instruction before the testimony, after the testimony, and at the close of trial, that the evidence may not be considered as character evidence and that Appellant acted in accordance with any such character trait. In *Williams*, the Ohio Supreme Court allowed the testimony because:

> The evidence is not unduly prejudicial, because the trial court instructed the jury that this evidence could not be considered to show that Williams had acted in conformity with a character trait. This instruction lessened the prejudicial effect of A.B.'s testimony, and A.B. corroborated J.H.'s testimony about the sexual abuse, which had been denied by Williams. Thus Evid.R. 404(B) permitted admission of evidence of William's prior crime because it helped to prove motive, preparation, and plan on the part of Williams. The prejudicial effect did not substantially outweigh the probative value of that evidence.134 Ohio St.3d 521, ¶24.

**{¶32}** In the case *sub judice*, the trial court instructed the jury that the evidence could not be considered to show that Appellant had acted in conformity with a character trait. The testimony tended to show Appellant's motive to show sexual gratification for

groping and raping children. The prejudicial effect did not outweigh the probative value of that evidence.

**{¶33}** Moreover, assuming, *arguendo*, the trial court erred in admitting testimony from LC and EB, we find any error was harmless. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Where no reasonable possibility exists that the unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

**{¶34}** In the case at bar, there was overwhelming evidence, as set forth above, of Appellant's guilt. The two victims testified in detail how Appellant raped them when they were little girls, both recounted multiple specific instances and identified Appellant as their abuser. Accordingly, we find any error in admitting the testimony did not have an impact on the verdict, the error was harmless beyond a reasonable doubt, and the other evidence in the case established Appellant's guilt beyond a reasonable doubt.

### c. Prosecutor's statements during closing arguments.

**{¶35}** Appellant argues the prosecutor is arguing Appellant is acting in conformity with a character trait when the prosecutor remarked Appellant is attracted to young girls and is motivated to have sexual relations with them.

{¶36} As Appellant did not object to the remarks during closing arguments, he has waived all but plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). To prevail under a plain error analysis, Appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶37} "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

{¶38} As noted above, the trial court instructed the jury that the evidence could not be considered to show that Appellant had acted in conformity with a character trait. Appellant has not demonstrated that "but for" this isolated statement by the prosecutor, he would not have been convicted of the crimes.

{¶39} We find the trial court did not abuse its discretion by admitting evidence of prior acts of child molestation.

**{¶40}** Appellant's sole Assignment of Error is overruled.

**{¶41}** For the foregoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.

By: Wise, John, J.

Baldwin, P. J., concurs.

Wise, Earle, J., concurs separately

JWW/br 0322

*Wise, Earle, J., concurs separately.*

{¶ 42} I concur in the judgment of the majority.

{¶ 43} While I find error, I find it to be harmless and specifically concur with paragraphs 33 and 34 of the majority opinion.

{¶ 44} I write separately because I find the other-acts evidence should not have been admitted.

{¶ 45} The trial court's December 19, 2019, judgment entry allowed the other-acts evidence because it found the evidence fit several of the exceptions in Evid.R. 404(B) and R.C. 2945.59.

### STANDARD OF REVIEW

{¶ 46} The Supreme Court of Ohio recently reviewed the admission of other-acts evidence in two cases decided on September 22, 2020; *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, and *State v. Smith*, --- Ohio St.3d ---, 2020-Ohio-4441, --- N.E.3d ---. In *Hartman* at ¶ 19, the court sought to "clear up some of the confusion that exists regarding the use of other-acts evidence." One issue it made clear was that "the admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *Id.* at ¶ 22. The question of "whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion" and is subject to review de novo. *Id.* If a permissible nonpropensity purpose is found, the trial court then has discretion to admit other-acts evidence. *Id.*

**PURPOSES FOR WHICH OTHER-ACTS EVIDENCE WERE ADMITTED**

{¶ 47} The trial court considered whether the evidence supported permissible purposes pursuant to R.C. 2945.59 and Evid.R. 404(B) and found several exceptions. In its judgment entry at page 7, the trial court found:

The factual overlap between the prospective testimonies [of the witnesses] may point to a **motive and intent: engaging in the sexual abuse of minors for sexual gratification**. Detailed other-acts testimony here **may help the jury identify [appellant]** by a common scheme, plan, system, or modus operandi – a "behavioral fingerprint" – **aimed at the targeting, grooming, and raping of children**. The testimony about prior acts of child sex abuse **may cast significant doubt, too, on the possibility that any of the alleged conduct in the present matter was accidental.** (Citation omitted, emphasis added.)

{¶ 48} The trial court further defined the purposes of the other-acts evidence in the instructions it gave to the jury prior to deliberation (T. at 955-956):

If you find that the evidence about other acts on the part of the Defendant is true, then you may consider that evidence only for the purpose of deciding whether that evidence proves: **one**, the absence of a mistake or an accident on his part on the dates of the crimes at issue in this case; **two**, his motive or his intent on the dates of the crimes at issue in this case; **three**, his

knowledge of the circumstances surrounding the crimes at issue in this case; or, **four**, his use of a particular method of selecting, grooming, and sexually abusing minor victims. The evidence about other acts may not be considered by you for any other purpose. (Emphasis added.)

## ANALYSIS OF OTHER-ACTS EVIDENCE

{¶ 49} The four nonpropensity reasons for admission of the evidence given by the trial court to the jury will be discussed out of order.

## 1. ABSENCE OF A MISTAKE OR AN ACCIDENT

{¶ 50} The trial court first instructed the jury the other-acts evidence may be used to show appellant's actions were not a mistake nor accidental. Appellant plead not guilty making a general denial of all allegations. He did not testify, nor did the police testify as to statements made by appellant. The record does not reflect any indication he ever claimed mistake or accident. Additionally, the state made no argument that appellant raised a defense claiming the acts were accidental.

{¶ 51} In *Smith*, *supra*, the Supreme Court of Ohio addressed lack of mistake evidence. In *Smith*, the defendant was charged in 2016 with rape, gross sexual imposition and disseminating matter harmful to a juvenile. The victim was his granddaughter. The allegations were he rubbed oil on her body under her clothes on her chest, buttock and vagina then licked her breast and vagina. He played a pornographic film showing oral and vaginal intercourse. The next morning he pressed his penis into her backside and began to remove her underwear; she moved away and he stop. He denied any of this was for sexual purposes. He admitted that he rubbed lotion on the child's body, but any

inappropriate touching of private parts was accidental. He claimed that if his penis did touch her it was accidental because he tends to get erections in his sleep. He further claimed an R-rated movie accidentally began to play for a few seconds when he attempted to play a cartoon on a DVD. The state sought to admit other-acts evidence from a 1986 allegation that he did similar things to one of his daughters. The *Smith* court held the prior testimony was admissible to rebut the defendant's claim that his 2016 acts were accidental, inadvertent or a mistake.

{¶ 52} In the instant case there is no such claim by appellant. In *Hartman, supra,* the Supreme Court of Ohio at ¶ 27 stated, "it is not enough to say the evidence is relevant to a nonpropensity purpose. The nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute...."

{¶ 53} Because there is no claim of mistake or accident before the jury, there is nothing for the prosecution to rebut on this issue. I find the evidence may not be admitted for a legitimate purpose under this exception to the rule.

### 3.  KNOWLEDGE OF THE CIRCUMSTANCES SURROUNDING THE CRIMES

{¶ 54} This purpose was not addressed in the trial court's judgment entry. It is unclear from the record exactly what nonpropensity purpose, "his knowledge of the circumstances surrounding the crimes," refers to in this case. Typically, this type of other-acts evidence is admitted to show a defendant's awareness, such as knowledge that he possessed contraband or his awareness of illegal activity. I find under the facts of this case, this is not a permissible purpose to admit other-acts evidence.

### PURPOSES 2. AND 4.

{¶ 55} The next two purposes are the focus of the case as highlighted by the prosecutors' statements to the jury.

{¶ 56} In closing argument, the state told the jury: "So for our purposes, we're asking that you consider this evidence of other acts on the issues of motive and method. Specifically, his motive and his intent to engage in sexual conduct with minor girls and his method of selecting, grooming, and sexually abusing these minor girls." T. at 908. Later in rebuttal, the state again argued to the jury how it should use this evidence. "So yes, of course you can consider [L.C.'s] testimony for those purposes that we discussed in our first closing which was to show method and to show motivation that Ron Williams is attracted to underage girls." T. at 944.

### 4. USE OF A PARTICULAR METHOD OF SELECTING, GROOMING, AND SEXUALLY ABUSING MINOR VICTIMS

{¶ 57} The state sought to use the other-acts evidence to show appellant used a particular method of selecting, grooming and abusing his victims. In its judgment entry, the trial court found the other-acts evidence may be helpful to the jury to identify appellant by this common scheme or plan, modus operandi or behavioral fingerprint.

{¶ 58} This type of other acts evidence is a permissible purpose if the identity of the actor is an issue in actual dispute. "[Modus operandi] is evidence of signature, fingerprint-like characteristics unique enough 'to show that the crimes were committed by the same person.' Evidence of modus operandi is relevant to prove identity." *Hartman*, *supra,* at ¶ 37. (Citations omitted.)

{¶ 59} In the instant case there is no question as to who may have done the acts. Both victims were clear the actor was appellant. The only question before the jury was whether the acts occured. I find the other-acts evidence to prove identity by showing

modus operandi or a behavioral fingerprint is not permissible because identity is not in dispute.

{¶ 60} In *State v. Curry,* 43 Ohio St.2d 66, 330 N.E.2d 720 (1975), the Supreme Court of Ohio discussed the two factual situations where the defendant's scheme, plan or system pursuant to R.C. 2945.59 is relevant. One is identity, which as discussed above is not at issue here. The other, as cited in *Curry* at 73 is when:

> [T]he "other acts" form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment.
>
> ***
>
> To be admissible pursuant to this sub-category of 'scheme, plan or system' evidence, the 'other acts' testimony must concern events which are inextricably related to the alleged criminal act. The July 8, 1972, incident and the December 22, 1972, incident are not so related; they are chronologically and factually separate occurrences.

{¶ 61} The *Hartman* court at ¶ 13 cited *Curry* to re-emphasize the connection of the other-acts evidence to the current crime:

> Common-plan evidence generally concerns events that are "inextricably related' to the crime charged. *Curry*, 43 Ohio St.2d at 73. The other acts form the "immediate background" of the present crime: they are typically either part of the "same transaction" as the crime for which the defendant is

on trial or they are part of "a sequence of events" leading up to the commission of the crime in question.

{¶ 62} In *Curry* there was a five to six-month gap between the charged acts and the other-acts. In our current case there is a at least a seventeen-year gap between the "chronological and factually separate" other-acts and the current charges. I find the other-acts evidence is not admissible pursuant to a common scheme, plan or system exception.

## 2. MOTIVE OR INTENT

{¶ 63} Motive and intent can be distinct issues. In *Hartman* at ¶ 48, motive is described as a specific reason for committing a crime. If a person commits a murder to cover up a previous crime, the other-acts evidence of the previous crime may tend to prove the motive for the murder, a permissible nonpropensity purpose. *Id.* Motive is not typically an element of a criminal offense. Intent is normally an element. Did a person act with the purpose to cause a certain result which culminated in a criminal offense? In the murder example, the motive may be to want a person dead; the intent is the mental purpose to do the act to cause the death (to pull the trigger of a gun). In this case, the trial court and the arguments of the prosecutor appear to treat the terms as one. The evidence was admitted to show appellant's intent was to derive sexual gratification from the acts alleged in the charge of gross sexual imposition.

{¶ 64} Generally, intent is "not a material issue for other-acts purposes unless it is genuinely disputed – in most cases, 'the act speaks for itself.' " *Hartman* at ¶ 55. However, when the crime charged is one of specific intent, such intent is a material issue in the case. *Id.* The crime of gross sexual imposition requires the state prove appellant had the

specific intent to perform the act(s) for the sexual gratification of himself or another. This is a potential proper purpose for other-acts evidence to be considered. However, based upon the facts of this case, a more thorough examination of the purpose is warranted.

{¶ 65} The decision on whether to allow other-acts evidence on the single count of gross sexual imposition should not be considered in a vacuum. Appellant faced sixteen counts of rape as well. The testimony relating to these counts was replete with explicit accounts of sexual conduct that left no question as to appellant's intent. A single jury heard all of the testimony from both victims. There is certainly an argument, in light of the extensive testimony in the rape counts, that the element of sexual gratification in gross sexual imposition is not in actual dispute.

{¶ 66} Assuming arguendo, the permissible purpose to show intent by way of the other-acts evidence is justified, in my view the Evid.R. 403 balancing test is still a bar to this evidence. The *Hartman* court at ¶ 32 advised courts to, "consider whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means…" In this case, the attendant sixteen counts of rape provided the jury with extensive and overwhelming evidence to find intent. This other-acts evidence is certainly probative of intent. However, it does not show anything about appellant's intent not already shown by the extensive testimony in the current charges. I find the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice. Therefore, I would prohibit the admission of the other-acts evidence based upon the Evid.R. 403 balancing test.

{¶ 67} However, as indicated above, I find the error to admit the other-acts evidence to be harmless, and I join in the judgment of the majority in affirming the conviction of appellant.